IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Michael J. Huffman, | : | Case No. 3:06CV1305 |
| Plaintiff, | : | |
| v. | : | MEMORANDUM OPINION AND ORDER |
| American Electric Power Service Corporation, et al., | : | |
| | : | |
| Defendants. | | |

This case involves a challenge to the denial of long-term disability benefits. Plaintiff, Michael Huffman sued his former employer, American Electric Power Service Corporation and American Electric Power System Long-Term Disability Plan (hereinafter, collectively, "the Plan"), for improperly denying him long-term disability benefits in violation of the Employee Retirement Income Security Act (ERISA). 29 U.S.C. §1002(2). The parties have consented to have the undersigned magistrate conduct all proceedings and enter judgment in this case.

Jurisdiction exists pursuant to 29 U.S.C. §1132 and 28 U.S.C. §1331.

Plaintiff and defendant each filed for judgment on the administrative record. For the reasons that follow, plaintiff's motion is denied and defendant's motion is granted.

**Background**

1

The Plan hired Huffman in 1973 as a field revenue specialist who connects, reads, disconnects, changes and installs meters. The job requirements could be described as "light" and include, among other requirements, lifting and carrying one to ten pounds on a frequent basis. In 2001, Huffman had back surgery after injuring himself in a fall. Continued back discomfort prompted Huffman to stop working in April 2004 and apply for long-term disability benefits in September 2004.

According to the Plan's provisions a disability is defined as "an illness or injury that requires the regular treatment of a duly qualified physician that may reasonably be expected to prevent you from performing the material duties of your occupation." The provision additionally requires "objective medical information" to continue eligibility for long-term benefits.

Huffman has a history of chronic low back pain ranging from three to six or seven on a scale to ten, but the specific cause proves elusive. At the recommendation of his doctors, Huffman underwent various tests including MRIs of the back and brain, an electromyogram (EMG), a CT scan, and a discogram. Generally, the results revealed some pain and damage to his back along with minor vessel disease in his brain, but his treating physicians found nothing that revealed the source or coincided with the severity of Huffman's complaints.

Over a dozen doctors either treated Huffman or reviewed his files. Although some of his treating physicians claimed Huffman was disabled, their opinions were not wholly corroborated by the test results or their own conduct. Despite concluding Huffman is disabled, his supporting physicians requested more tests, sought second opinions, or deferred future work determinations to other doctors.

Huffman's disability claim was reviewed over a three-step appeal process by seven

physicians qualified in fields related to his complaints. While not physically visiting with Huffman, each physician reviewed the documentation submitted. After each review step Huffman had the opportunity to submit additional medical documentation to support his claim. Despite the Plan's request for specific test results justifying his claim, Huffman was unable to sufficiently support his claim. The Plan concluded there was a lack of evidence to substantiate a loss in functioning that would prevent Huffman from performing his job.

## Standard of Review

Because the Plan vests discretionary authority in the plan administrator, under ERISA law the denial of disability benefits is reviewed under the "arbitrary and capricious" standard of review. *See, Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (*en banc*). When applying the arbitrary and capricious standard, the court must determine whether the Plan's decision was, "rational in light of the plan's provisions. . . ." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988). Stated differently, "'[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)).

## Discussion

Huffman claims the Plan improperly denied him long-term disability benefits. More specifically, he claims the Plan: 1) arbitrarily added an "objective medical information" requirement to the Plan's disability provisions. 2) did not meet its burden in providing supplemental evidence before denying his claim; and 3) "cherry picked" favorable evidence when rationalizing its decision to deny benefits. Although Huffman provided some support for his argument, he did not overcome

the arbitrary and capricious standard of review.

## I. Addition of Objective Medical Information Term

Huffman argued The Plan arbitrarily required him to submit objective medical information supporting his claim for disability. As a result, the Plan failed to give due deference both to his treating physicians' opinions and to his subjective complaints of pain. The Plan contends its objective medical information requirement was not only expressed in the Plan's disability provisions, but also justifiable under the circumstances. Furthermore, Huffman's evidence supported the Plan's decision to deny benefits. Despite including the term in the Plan's provisions, Huffman argued objective medical information was not defined and therefore should be interpreted broadly.

*Pelchat v. UNUM Life Ins. Co. of America*, Case No. 3:02CV7282, 2003 WL 21105075 (N.D. Ohio May 12, 2003) supports a broad interpretation. In *Pelchat*, the denial of a benefits claim due to fibromyalgia was arbitrary and capricious in part because of UNUM's requirement of objective medical information, despite the absence of this requirement in the plan's provisions. Huffman's case is distinguishable on two accounts. First, the claimant in *Pelchat* suffered from myofascial pain. Because the cause of myofascial conditions is unknown, it is difficult to capture with objective testing. *Hufford v. Harris*, 322 F. Supp. 2d 1345, 1356 n.3 (M.D. Fla. 2004); *(Duncan v. Continental Casualty*, 1997 WL 88374 (N.D. Cal. Feb. 10, 1997). The source of back pain on the other hand is more readily discoverable, making the Plan's request for objective support more reasonable. *Hufford*, 322 F. Supp. 2d at 1356.

Second, the Plan expressly conditions continued receipt of benefits on receiving objective medical information from the claimant. According to the Plan's provisions, eligibility to receive

benefits ends, "[t]he date you fail to submit satisfactory, written proof of objective medical information relating to your illness or injury which supports a functional impairment. . . ." No such condition existed in *Pelchat*. *Pelchat*, 2003 WL 21105075, at *32. Consequently, the Plan's objective medical evidence requirement is justified.

### A. Due Deference to Huffman's Treating Physicians

Notwithstanding the Plan's objective medical information requirement, Huffman points out the term objective medical information is not defined within the Plan's provisions. As a result, Huffman arguably provided sufficient evidentiary support of his claim in the form of test results and subjective notes from his treating physicians regarding their observations and examinations. *See Petroff v. Verizon North, Inc. Long Term Disability Income Plan*, No. 02-318 Erie, 2004 U.S. Dist. LEXIS 8138, at *42 (W.D. Pa. May 4, 2004) (suggesting objective medical information included an MRI, CT and x-ray reports, and plaintiff's doctors' observations). Such subjective information, Huffman claims, should therefore count as objective medical information. While the court in *Petroff* considered doctors' observations objective, this position is not widely supported. Most courts view objective test results and the opinions of treating physicians separately. *See e.g., Bishop v. Metropolitan Life Ins. Co.*, No. 01-2458, 2003 WL 21659439, at *311 (6th Cir. July 10, 2003); *Boone v. Liberty Life Assur.* Co., No. 05-1090, 2005 WL 3479835, at *473 (6th Cir. Dec. 20, 2005); *Brooking v. Hartford Life and Acc. Ins. Co.*, No. 04-6478, 2006 WL 357881, at *549 (6th Cir. 2006); *Storms v. Aetna Life Ins. Co.,* No. 04-5621, 2005 WL 2175997, at *758 (6th Cir. 2005); *Maniatty v. Unumprovident* Corp., 218 F.Supp.2d 500, 504 (S.D.N.Y. 2002), *aff'd, 62* Fed. Appx. 413 (2d Cir. 2003).

Huffman argues the observations and examinations of his treating doctors were nevertheless

5

not given their due deference. A plan's denial of benefits was arbitrary and capricious in part because of its failure to consider the claimant's pain allegations along with the doctors' diagnosis and chart notes. *Wilson v. The John C. Lincoln Health Network Group Disability Income Plan*, Case No. CV-04-1373-PHX-NVW, 2006 WL 798703, *6 (D. Ariz., March 28, 2006). On the other hand, a plan's administrators may not arbitrarily discredit a claimant's reliable evidence, including the opinions of his treating physician; nor may the courts require an administrator to give "special weight to the opinions of a claimant's physician." *Black & Decker Disability Plan v. Nord*, 538 US 822, 834 (2003). Where a plan administrator chooses the opinion of one doctor over another, that decision is not arbitrary and capricious when, based on the evidence, there is a reasoned explanation for its decision. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877(6th Cir. 2006).

Even if the Plan must give deference to treating physicians, their opinions were not wholly supported. Dr. Felton's May 24, 2004, chart notes indicated the source of complaints were not determinable from MRI studies and a second opinion was recommended. Dr. Felton's May 10, 2004, attending physician statement (APS) indicated lumbar and thoracic disk displacement and stated Huffman should not work; however, his June 21, 2005, letter stated that after issuing the work excuse on September 3, 2004, Dr. Hoeflinger was to take over future work determinations. Dr. Hoeflinger's April 9, 2004, letter stated he could not identify the cause of Huffman's pain and recommended an EMG to determine if there was compression to the L5 nerve root. A few months later Dr. Hoeflinger's September 7, 2004, APS stated Huffman was not a neurosurgical problem. Confusingly, Dr. Hoeflinger's September 10, 2004, letter stated Huffman was disabled because of degenerative disk disease, despite no evidence of neural compression that coincided with Huffman's

complaints.[1]

Additionally, the objective test results Huffman provided are also not conclusive and therefore lend themselves to a rational interpretation in the Plan's favor. A Medical Assessment of Ability to Do Work Related Activities form indicated Huffman can only lift ten pounds "very little" instead of frequently like his job requires. Alternatively, Dr. Farhat's June 29, 2005, letter stated an EMG of the lower extremity was normal. Huffman also submitted thoracic and lumbar MRI's indicating a disc herniation/annular disk tear, degenerative disc disease, disk bulge, and disc protrusion. Interestingly, Huffman's own treating physicians concluded the MRI's did not reveal the source or coincide with the severity of his pain. Inconclusive objective test results undermine Huffman's argument that the Plan arbitrarily discredited his supporting physicians' opinions.[2]

---

[1] Other inconsistencies include Dr. Hoeflinger's September 24, 2004, letter that indicated Huffman was permanently disabled from doing his job, provided he completed a Functional Capacity Evaluation (FCE). Huffman never completed an FCE. Dr. Deran's June 28, 2005 letter indicated femoral occlusive disease and stated Huffman was permanently disabled from his current position; however, Dr. DeRan did not indicate any work limitations and noted that Huffman was actually doing quite well "cardiac-wise." Dr. Zangara's May 5, 2004, letter stated there was no sign of muscle or nerve disease and nothing to correlate with Huffman's symptoms. Dr. Hoeflinger's April 23, 2004, letter indicated some disc degeneration and protrusion, but a discogram was ordered because the origin of pain was still unknown. Dr Thekdi's September 30, 2004, office notes stated from a cardiovascular standpoint, Huffman was doing well. Dr. Thekdi's October 14, 2004, office notes stated the stress test did not reveal anything abnormal. Dr. Zangara's *main finding* was muscle spasms. The analysis of the Plan's seven reviewing physicians all align with a denial of benefits.

[2] Other objective test results include a discogram on May 10, 2004, that indicated positive for pain reproduction similar to chronic pain at L5-S1 and bulging disk at L4-L5, but no correlation of pain reproduced at the L3-L4 or L4-L5 levels; a CT scan on May 10, 2004, indicated mild stenosis disc bulging and broad based disc herniation; a brain MRI on October 12, 2004, indicated minor white matter ischemia or small vessel disease, but ultimately the brain MRI showed "nothing acute - non-specific vertigo"; Dr. Kartha's June 29, 2005, letter indicated Huffman had a postural and kinetic tremor of his right hand greater than left hand, but the rest of his neurological exam was normal; Dr. Thekdi's October 14, 2004, office notes stated the stress test did not reveal anything abnormal.

**B. Due Deference to Huffman's Subjective Pain**

Huffman contends the Plan completely ignored his complaints of pain along with corresponding doctors' notes and charts in favor of purely objective medical information when denying his disability claim. The Plan disagrees.

Subjective complaints of pain along with medical reports of treating physicians could be enough to establish disability. *Krizek v. Cigna Group Ins.,* 345 F.3d 91, 101-102 (2d Cir. 2003). Courts are troubled by a plan's failure to consider the claimant's pain allegations and the failure to analyze how one's conditions affected one's ability to perform his or her job when denying a benefits claim. *Audino v. Raytheon Co. Short Term Disability Plan*, No. 04-10729 2005 WL 846234 882, 885 (5th Cir. April 13). At the same time, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker* 538 U.S. at 834.

In *Audino*, there were clear mischaracterizations of abnormal test results that provided support for the claimant's complaints of pain.[3] *Audino,* 2005 WL 846234 at *884. In contrast, Huffman's evidentiary support was inconclusive on its face. Additionally, *Audino* does not mention an objective medical information requirement in the plan's provisions. *Id.* at *883. In Huffman's case the Plan's provisions require objective medical information in support of a disability claim. Imposing a duty to analyze how a claimant's conditions affect the ability to do his job does not follow when the evidence supports the Plan's belief the claimant is not disabled.

*Krizek* is similarly inapposite. In that case, the source of a lab technician's problems with

---

[3] Medical consultants made incorrect statements about abnormal inflammation test results and false assertions that there were no range of motion abnormalities when in fact there were.

hearing, memory, taste and smell were not revealed after CAT scans, MRIs and other examinations. *Krizek*, 345 F.3d at 95. Two of the technician's doctors believed she was disabled, yet her claim was denied for lack of objective medical information. *Id*. The court remanded because the opinions of her doctors along with her subjective complaints might have been enough to support her disability claim. *Id*. at 102. In contrast to *Krizek*, Huffman's case involves inconsistent opinions from his own treating physicians as well as inconsistent objective medical information. This inconsistency creates room for rational debate and protects the Plan's decision.

## II. Burden of Providing Supplemental Evidence

The Plan and Huffman disagree about who is responsible for providing supplemental evidence when it is required to satisfy a disability claim. Each feels it is the other's burden. While a plan's failure to conduct a physical exam may be arbitrary and capricious, especially when that plan specifically reserves the right to do a physical exam**,** there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination."[4] *Evans* 434 F.3d at 877 (6th Cir. 2006) (quoting *Calvert v. Assurance Co. of Boston*, 409 F.3d 286, 296 (6th Cir. 2005). Courts generally defer to the terms of the policy when determining who must supply the supplemental evidence requested by the insurer. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991); *Bucks v. Reliance Standard Life Ins. Co.*, No. 99-3398 2000 WL 659029 (6th Cir. May 12, 2000).

The Plan's provisions state, "[t]o continue receiving benefits, you will be required to provide continuing proof of your disability at least once each year. Objective medical evidence must be supplied supporting your case for disability." In *Miller,* the Sixth Circuit construed a similar

---

[4] The Plan's provisions do not appear to reserve a right to conduct a physical exam.

9

provision to mean that the insured bears the burden of proving continued disability. *Miller*, 925 F.2d at 984. The language of the plan in *Miller* stated that "on demand from the Insurance Company[,] further satisfactory proof, in writing, must be submitted to the Insurance Company that the disability continues." *Id.* at 980. The Sixth Circuit held that due to this type of language, "it is the employee who must continue to supply on demand proof of continuing disability to the satisfaction of the insurance company." *Id.* at 985. "*Miller* does support the general argument that when the plan allocates the burden of proving disability, it is binding on the parties." *Wilson* v. *Met Life, Inc.*, No. 03-10045-BC 2005 WL 475440 at *4 (E.D. Mich. Feb 10, 2005).

The Plan even suggested additional documentation Huffman could use to support his claim. Specifically, the Plan suggested a musculoskeletal or neurologic exam; a recent nuclear stress test to evaluate for ischemia; an orthopedic neurological evaluation; a recent cardiac evaluation; functional capacity evaluations; an abnormal neurological exam result; and an abnormal EMG or nerve conduction test result. Huffman provided no such support.

### III. Cherry Picking

Huffman argues the Plan "cherry picked" the evidence because it failed to analyze all of the relevant documentation supporting his benefits claim. The Plan contends it considered all the relevant documentation submitted and its decision denying benefits was amply supported.

An administrator acts arbitrarily and capriciously when it "engages in a selective review of the administrative record to justify a decision to [deny] coverage." *Metropolitan Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007); *see Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 359-362 (6th Cir. 2002) (observing that a selective review of the administrative record is inappropriate). A failure to identify specific work restrictions or limitations does not justify a denial

of benefits in the face of extensive documentation of pain, medical procedures, medications, and therapies the claimant endured. *Swintek-Hallinan v. UNUM Life Insurance Co. of America,* No. 04-1386 JRTJSM, 2005 WL 1593051, *3 (D. Minn. July 6, 2005), *Swintek-Hallinan* is distinguishable because unlike Huffman's case, the claimant's record in *Swintek-Hallinan* is replete with evidence that is not inconsistent, and her position as a legal secretary did not require an identification of physical limitations.

Furthermore, it is not clear the Plan reviewed Huffman's case so selectively. The Plan acknowledged Huffman's pain and various back issues. Unfortunately for Huffman, despite his complaints, test results did not reveal the source or coincide with the severity of his pain. It is true some of his doctors' opinions were not specifically addressed in the Plan's analysis,[5] but their opinions were less than clear. Rather than overanalyzing Huffman's inconclusive evidence, the reviewing physicians rationally focused their analysis on points supporting their position. The volume of documentation submitted may have simply precluded a detailed analysis of each item.

Although Huffman provided some support for his claims, based on all the evidence the undersigned is unable to conclude that the Plan's decision to deny long-term benefits was arbitrary and capricious.

---

[5] Dr. Felton's opinions were not specifically discussed, but they were not supported by objective medical information. Furthermore, after their receipt virtually all documents submitted were listed on a review form at some point by a reviewing physician.

## Conclusion

For the foregoing reasons, it is

ORDERED THAT plaintiff's motion for judgement on the administrative record is denied and defendant's motion for judgment on the administrative record is granted.

So ordered.


                s/Vernelis K. Armstrong
                United States Magistrate Judge

Dated: September 28, 2007